Okay, we're ready for our last case this morning and it's a related case to the one we just heard. It's case number 19-13381. Aitken et al versus the United States. And as I understand it, Mr. Givner, you represent Ms. Aitken and you're going to have nine minutes for your initial argument and three for your rebuttal. And then Ms. Daly, you represent the other appellants, Grant and Hwita, and you're going to have two minutes up front and one minute for rebuttal. Is that right? Okay, then we are ready to go. Mr. Givner, you're first, but I think you are muted. Okay, you're good to go. Thank you, your honor. May it please the court. So that was an interesting argument. We just listened to, we sort of caught the tail end of this dispute between the FDA and the Stem Cell Clinic. Our clients are the individuals who had their stem cells banked at a tissue bank, an FDA registered tissue bank that was run by US Stem Cell Inc. as opposed to US Stem Cell Clinic, which was the manufacturer of the allegedly misbranded products and was the focus of the prior appeal. So our clients had entered into contractual arrangements at the tissue bank to keep their stem cells maintained there. They had no prior notice of this lawsuit. They were not named parties to this lawsuit. They did not know anything about this lawsuit. The record shows that they first found out about it after the summary judgment was entered in June of 2019, when they were notified by the tissue bank that there was this litigation that was ongoing. They weren't even notified at that point that their stem cells were at risk in the sense that they could possibly be subject to a destruction order. And then after the injunction order was entered, they first got noticed that their stem cells, which they own contractually and which they were relying upon for purposes of their treatment, because conventional treatments had not been adequate for them, were now subject to destruction. So, and within 30 days, within a very short period of time. So I represent approximately 70 of these individuals and we filed a motion to intervene in the trial court and the motion was denied. And- Can I ask you a question, Mr. Gifford, what, because I haven't taken a deep dive into this part of the record yet. What would you have portended to do had you been granted intervention either as of right or permissively? What would you have tried to do in the district court? So, your honor, we filed a, we attached to our petition for intervention a complaint and our complaint had basically three counts in it. The first count was that because this is our property and the court is ordering that our property be destroyed without us having the opportunity to be heard that our due process rights were denied. That was the first argument. The second argument was that we were denied just compensation if our property was being taken by virtue of the district court action. And the third argument that we made was that our stem cells did not fall within the scope of the issues that were framed in this case or any of the evidence that was heard below because the issues that were framed by the complaint did not focus on the activities of the tissue bank. There were no allegations of malfeasance at the tissue bank and our cells were being maintained at the tissue bank. So our third count in the complaint that we attached was that we were outside the scope of this injunction as well as the ruling. And so hence we should not have been affected by it. That would have been our argument as framed by the complaint. Didn't the district court's ruling act more as a stay on the motion to intervene whether as a right or permissive rather than a true denial? And if indeed that is the case, do we have jurisdiction to entertain it now? The district court may have labored under a misapprehension about what it could or could not do while the case was on appeal. But that's a different question from whether we have the power to entertain this now. Usually when you look at this anomalous rule, which is kind of limited to our court in the Fifth Circuit, there's at least a ruling. I'm gonna let you intervene whether as a right or permissively. I'm not gonna let you intervene. There's a ruling. Here don't we really effectively have a stay on the motion rather than a true denial? And if that be the case, how do we have power to adjudicate this matter at all at this time? The short answer is I don't believe it's just a stay. The effect, because the district court left in effect the prohibition on the use of the stem cells. It's now been 18 months. And my clients who depended on these stem cells for their well-being have been denied the access to these stem cells. And it's a trite expression to say justice delayed is justice denied. But in a case like this where you are looking to non-conventional treatments to possibly save your life, every moment counts. And so because of that, your honor, you're right. They stayed, the district court stayed the destruction but it kept in place the prohibition on the use of the stem cells. And because of that, your honor, it was a, it's a ruling. Answer for this court to say, we don't have the power to entertain it but we think the district court misapprehended that it was unable to rule on the motions. There was nothing that prevented its consideration of the intervention motion. Doesn't that solve the problem? I'm sorry, I missed the very beginning of your- With that, even if we were to say we are without jurisdiction to adjudicate it, we surely could tell the district court that it misapprehended that it was unable to rule on the motions. In which case, your claims are dismissed on the grounds that we don't have the power to entertain them. But the district court then at least has some guidance that it was able to rule on the motions to intervene. Well, your honor, I could see how the court would do that but I don't believe that that's consistent with what the rule is in the 11th circuit as to intervention under the anomalous rule which simply creates provisional jurisdiction as a matter of law. And says that if intervention was proper at the time had the intervention factors been considered that the court can order intervention, say it has jurisdiction. And then if it finds interestingly enough that there wasn't the basis for jurisdiction then at that point there was no, for intervention then there was no basis for jurisdiction. That's the law here in the 11th circuit. And I believe that that's the right ruling. I wanna talk about the other case, the city of Milwaukee case. Mr. Gover, before you do that, let me just stay with the point you just made. If the judge here has, the anomalous rule as I understand it, as Judge Marcus I think was implying, presupposes that there's been a ruling on your motion. And you say, well, it's de facto a ruling because it's having an effect on us. So suppose the judge had said only about your ruling, I have your motion, I will get to it in due course. Would you be able to appeal that under the anomalous rule? No, no, because there's no ruling. In this case, the judge entered a ruling. She denied the motion to intervene, albeit without prejudice, but she denied it. And then she gave an explanation as to why by saying she didn't feel she was able to rule on it because of the possibility that this appeal would be rendered and the fact that she had on the motion for clarification, stopped the destruction of the steles until 30 days after the mandate of the appellate court in the event that there was an appeal. But there is no question she ruled. And there is no question. Did you make the point initially or did you come back after this order and make the point you're now making about use of the stem cells in the interim? Well, we made those points in our brief that you'll find that argument in our brief where we made that very point because that's really the critical thing. I've been given notice of one of my clients that's passed away in the interim. I don't know the basis and I haven't filed a suggestion of death, but I can alert you. How many clients do you have? Approximately 75. Thank you. Thank you. Okay, Mr. Giffner, thank you very much. You've saved your time for rebuttal. Ms. Daly. Ms. Daly, I think you're muted. Good morning, your honors. And may it please the court. My name is Kathleen Daly and I represent 18 of the intervener appellants in this case. Along with Mr. Giffner, we do ask that the court reverse the decision of the district court. She definitely did make a decision and I believe that her decision against the appellants and waiting until after this court renders a decision has caused harm to our clients. Our clients have not been able to access those stem cells. As we pointed out in our brief, several of those clients have suffered from very chronic pain, debilitating illnesses. And the need for those cells is absolute. As Mr. Giffner also stated, nothing about the cells that were banked was ever raised in the district court in the complaint. And the clients found out about this when they saw it for the first time as part of the injunction. So as to the remaining part of my arguments, I really adopt what Mr. Giffner has to say, unless the court has any questions for me. All right, thank you very much, Ms. Daly. Okay, Mr. Jed, we're back to you. Good morning, your honors. The United States is participating in this appeal on just a very narrow issue. We didn't take a position on the merits of intervention in district court or here. Our sole position is simply that this is not a final appealable order. And just to be very clear, our position on that is an incredibly narrow one. Although in many cases, the denial of a motion to intervene is appealable. Here, if you just focus on both the nature of the attempted intervention and the nature of the district court's decision, the district court did not rule on whether intervention was ultimately appropriate. Therefore, on its own terms, it doesn't fit into the court's anomalous rule. And as the district court made clear, its decision or its decision not to decide was focused on the particular relief being requested by the putative intervenors. If you look at the motion to intervene and the complaint that Mr. Giffner was just talking about, you can find that at document 220, and you look at the other motion to intervene and intervention complaint, you can find that at documents 236 and 237. The gist of what I understand them to have been saying is not that they were challenging the injunction or they were challenging the summary judgment decision. Rather, it was just that they were taking issue with the scope of the injunction. And in particular, they were saying that they don't want what they view as their cells to be destroyed. And as I think the district court made clear, given the nature of that effort to intervene, that's something that the district court can and has stated that she will rule on later, assuming that the district court's summary judgment decision is ultimately affirmed. And I think when Judge Jordan asked Mr. Giffner, well, what is it that you wanna be able to do in front of the district court? I think virtually everything that Mr. Giffner described are arguments that if the district court's summary judgment decision heard in the earlier appeal is affirmed, he can then go back and make to the district court. I think for the- Except Mr. Jed, that if the stem cells or whatever you wanna call them are the purported intervener's property, they've effectively been denied the use of that property for about a year and a half or so. And just because, it just seems very odd to me that just because the district court put the words without prejudice in its order, it just means that the order is unappealable and we lack jurisdiction. They did not just want to prevent the destruction. They wanted to argue that they were denied, according to what Mr. Giffner just explained, they wanted to argue that they were denied due process because this was their property and it was being ordered destroyed or potentially ordered destroyed. They wanted to argue that they needed to be paid just compensation for the destruction of their property. And they wanted to argue that they were outside the scope of the injunction. And by denying the motion to intervene, albeit without prejudice, you've denied them a resolution for, I don't mean you, but the system has denied the purported interveners a decision on their claims for a significant period of time. Shouldn't that affect the analysis on justiciability? Well, Judge Jordan, just to be clear, we're not saying that the district court's use of the terms without prejudice are the both beginning and end of the analysis as I think the city of Milwaukee Seventh Circuit's decision that we rely on makes clear. That's a strong indicator, but obviously it's not talismanic. And so I agree with the kind of premise of your question that there does need to be a kind of functional analysis to ask, I guess, to kind of put this in larger doctrinal terms, whether this really is a final judgment, whether the collateral order doctrine really would apply. So we understand the anomalous rule essentially just to be an application of that doctrine. And Judge Jordan, in all candor, I mean, reading through the motions to intervene and the intervener complaints, and at least the opening brief filed in this court, it seems that what Mr. Gibner's clients and Ms. Daly's clients are focused on is the destruction of the property. I think the sort of separate, we wanted to be using it all along argument is something that if it was in there in all candor, I didn't see it as a point of emphasis or really a point at all. I think it's something that really emerged for the first time in the reply brief. But Judge Jordan, I mean, I should also just step back and say the nature of the final judgment rule is there are situations where you can end up with someone who says, look, I don't wanna wait for a decision. There's a reason that I want something decided now. And typically under the final judgment rule, the fact that you want it decided now rather than later, doesn't mean that what is otherwise a non-appealable interlocutory decision becomes appealable. And it may be for that reason that I think Mr. Gibner's opening brief as a kind of alternate basis for jurisdiction has suggested that he appealed what was effectively the denial of a stay. But as we point out, although what is effectively a denial of a stay may very well capture this kind of idea that you want relief now rather than later, it is black letter law that is not appealable. Mr. Gibner. So are the interveners, oh, I'm sorry, Judge Ginsburg, go right ahead. Thank you. If the appellants were to return to court now saying I have a client here who needs a surgical procedure shortly and for which his stem cells are essential, would you be taking the position that the court should defer ruling on that, the district court? Well, Your Honor, we took no position below even on the timing of the ruling. It was the district court just on its own made a decision about timing. And in all candor, I don't think I'm kind of able to take a position here about what we would say in court if they made that sort of argument. That's surprising, frankly. I should think that it would be rather obvious. I'm sorry, Judge Ginsburg. I'm afraid I couldn't quite hear that. You surprised me. I should think it would be rather obvious what the position of the government would be in response to that. Well, Judge Ginsburg, I mean, I think some of it may very well turn on how the government analyze whether they're proper interveners, which is just not something that we've had an opportunity to flesh out a position on. But I think there is just an additional response, which maybe gets to, I think, Judge Ginsburg, both what you're asking and what Judge Jordan was asking me for, which is just to look at the actual litigation behavior in this case. Ordinarily, if you have a party that tries to intervene and it's because they wanna, for example, challenge an underlying judgment, they would say something like, I'm intervening, although I don't take issue with every issue of the underlying judgment, I take issue with several aspects of it. I want to appeal. They then typically, even if their motion to intervene were denied, they would appeal from both the denial of intervention and they would file a notice of appeal from the judgment itself. Obviously, that's not what happened in this case. They've solely appealed from the denial of intervention. They might potentially either try to intervene in the court of appeals, something that didn't happen here, or maybe even just file an amicus brief in the court of appeals, something that didn't happen here. And again, I don't wanna sort of press this issue too hard. Obviously, we're here on a very limited basis, just flagging that given the very specific nature of the motions to intervene and the very narrow nature of the district court's decision, which was effectively a decision not to decide, that that doesn't fit into 1291, that it's not an appealable final judgment, unless the court has any other questions. Thank you, your honors. Thank you very much, Mr. Jett. Okay, Mr. Gibner, you've got three minutes of rebuttal time and then Ms. Daly will have one. So I wanna bring to the court's attention our complaint and intervention, because our complaint and intervention raised what I thought would be of interest to the court below, which is, let's say we were allowed to intervene, how could we use these stem cells in a lawful way? And our complaint specifically addressed that and talked about the fact that the federal government has adopted right-to-use laws that allow drugs that are not necessarily approved to be used in advance in exceptional circumstances, that various states have adopted right-to-try legislation where they allow unapproved, quote-unquote, drugs to be used in certain limited circumstances. We raised the fact that other jurisdictions outside of the United States would allow for the use of these drugs, of these, I'm not gonna use the term drugs, I apologize, the use of the stem cells, whereas the United States may not. And the reason for that is because the parties, my clients, intended to use the stem cells. They were using them and they intended to continue to do so. And with all due respect, that's encompassed within our due process claims. It's not- Mr. Gifford, looking at the request that you made- Yes. At your DE 220, page 19, and 235, page 9, there's a request for a stay of destruction. Correct. Nothing else. Now you're telling us it was, you know, your real concern in the interim is access for use, but that's not what you requested. Well, we requested the stay so that we would have something to argue about, Your Honor, with all due respect. If the stem cells are destroyed- But you requested they not be destroyed, and they are not being destroyed and will not be destroyed without your further notice and opportunity to participate. But as for access to use, you've never asked why. Because we weren't given an opportunity to intervene in the action, Your Honor. And maybe there was a fault in the- You did request a stay of the destruction. You could have requested access as well. You just didn't. Well, Your Honor, in all fairness, I think what we requested is the fault. I think it's a little broader. We requested the opportunity to intervene in the action and to assert our claims. And those claims included the due process claims that I've identified. And in addition to the right to intervene, we asked for a stay. So we asked for two things. And we asked for the stay so that our intervention would not become moot because if the stem cells were destroyed, then the intervention is moot. And in the complaint for intervention, it's clear that we have framed the issue of the continuous use front and center in the case. I believe. I see my time is up. I'm happy to answer any further questions. All right. Thank you very much, Mr. Gibner. We appreciate it. Ms. Daly, you're going to wrap up the day for us. So go right ahead. Okay. Well, just one point I want to add to what Mr. Gibner has also said in terms of the complaint. We absolutely never have an opportunity, but it's not just the state of the destruction. It's also a suspension to allow us the opportunity to present the arguments, just as Mr. Gibner said. So we are asking for it at a specific time. There was no possibility of us intervening and making these arguments prior to the court's rendering of its decision. And so we went with what we had. Other than that, unless you have any questions, I rest on my briefs and on Mr. Gibner's briefs. All right. Thank you all very much. We appreciate the arguments. These two are very difficult, I think, cases in different sorts of ways. That's at least my personal perspective. So we appreciate the help that you've given us. We are in recess until tomorrow morning at nine.